## WILLIAM P. BREWER *vs.* SAMUEL K. WILSON.

1. Equity will not decree the specific performance of a contract, if it be reasonably doubtful whether the contract was finally concluded. The parties will be left to their remedy at law.

2. Specific performance will not be decreed on the ground of part performance of the contract, unless the part performance has been such as clearly to take the case out of the operation of the statute of frauds.

*Mr. E. T. Green,* for complainant.

*Mr. E. M. Shreve,* for defendant.

Cases cited by complainant's counsel. *Nix. Dig.* 330, § 9, § 14; 1 *Sugden on Vendors* 160, *ch.* 3, *sec.* 7; 2 *Parsons on Con.* 284; *Whitbread* v. *Brockhurst,* 1 *Bro. Ch. R.* 417; *Hamilton* v. *Jones,* 3 *Gill. & Johns.* 127; *Heth's Ex'r* v. *Wooldridge's Ex'r,* 6 *Randolph* 607; *McKee* v. *Phillips,* 9 *Watts* 85; *Parkhurst* v. *Van Cortlandt,* 1 *Johns. Ch. R.* 274; *Frame* v. *Dawson,* 14 *Vesey* 386; *King* v. *Hamilton,* 4 *Peters' S. C. R.* 311; 4 *Kent's Com.* 451; *Earl of Aylesford's case,* 2 *Strange* 783; *Meeker* v. *Meeker,* 16 *Conn.* 408; 1 *Story's Eq. Jur.,* § 742; *Butcher* v. *Stapely,* 1 *Vernon* 363; *Pyke* v *Williams,* 2 *Vernon* 455; *Lacon* v. *Mertins,* 3 *Atk.* 1; *Morphett* v. *Jones,* 1 *Swanst.* 172; *Clerk* v. *Wright,* 1 *Atk.* 13; *McLeish* v. *Tate, Cowp.* 781; *Alsopp* v. *Patten,* 1 *Vernon* 472; *Owen* v. *Davis,* 1 *Vesey, sen.,* 82; *Attorney-general* v. *Day, Ibid.* 221; *Potter* v. *Potter, Ibid.* 441; 1 *Story's Eq. Jur.,* § 763; *Newland on Con.* 183; *Eaton* v. *Whitaker,* 18 *Conn.* 222; *Tilton* v. *Tilton,* 9 *N. H.* 386; *Lowry* v. *Tew,* 3 *Barb. Ch. R.* 407.

Cases cited by defendant's counsel. *Smith* v. *McVeigh*, 3 *Stockt.* 239; 1 *Story's Eq. Jur.*, § 742, § 769; *Lokerson* v. *Stillwell*, 2 *Beas.* 359; *Fry on Sp. Perf.*, § 397, § 418; *Phillips* v. *Thompson*, 1 *Johns. Ch. R.* 131; *Allen's estate*, 1 *Watts & Serg.* 383; *Pugh* v. *Good*, 3 *Watts & Serg.* 56; *Fry on Sp. Perf.*, § 387, *note* 27; *Gilbert* v. *the Trustees*, 1 *Beas.* 180, 204; *Stoutenburgh* v. *Tompkins*, 1 *Stockt.* 336, 242; *Fry on Sp. Perf.*, § 425, § 432, § 457.

THE CHANCELLOR. The bill is filed to enforce the specific performance of a contract for the sale of real estate. The contract rests in parol. The complainant alleges, that on the day of the contract, and in part performance thereof, he surrendered the occupation of the premises to the purchaser, and put him in the full possession and enjoyment thereof. The defendant, by his answer, denies the making of the contract and the delivery of possession of the premises, as set out in the complainant's bill. The burden of proving both issues is upon the complainant.

The material terms of the contract, so far as the negotiation proceeded, are not disputed. The contract was for the purchase of a stable, for which the defendant was to pay $1075. The deed was to be made in a few days thereafter, and the purchase money was to be paid on the delivery of the deed, by the defendant's check therefor, payable in sixty days. Thus far the parties agree. But the defendant alleges that the contract was not closed. That during the negotiation he had objected that the location of the premises was hazardous, the building being peculiarly exposed to danger from fire, and that the defendant was at liberty, before the delivery of the deed, to satisfy himself upon that point, and that if his investigation did not prove satisfactory, he was under no obligation to take the title. That his investigation proved unsatisfactory, and upon that ground he declined to accept the title. The material question presented by the issue between the parties is, whether the contract was, or was not, finally closed. No one was present at the close

of the negotiation but the parties themselves.  The proof of the contract rests upon their testimony alone.  They are in direct conflict upon the point in issue.  There is nothing in the testimony of the parties which can be regarded as decisive of the question.  The complainant relies upon the partial occupancy of the premises by the defendant, and his statement to his hired man that he had bought the stable, as corroborative proof of the allegations of the bill, sufficient to overcome the defendant's answer.  It may be admitted, that this additional evidence is sufficient to obviate the technical objection that something more than the testimony of a single witness is necessary to overcome the allegations of the answer, and that it does incline the scale in favor of the complainant's statement.  But it is not absolutely inconsistent with the defendant's view of the case, and cannot, therefore, be regarded as conclusive of the question, whether the contract was, or was not, finally closed.

A specific performance will not be decreed, unless the existence and the terms of the contract be clearly proved.  ·It must be shown that a contract has been concluded.  If it be reasonably doubtful whether the contract was finally concluded, equity will not interfere by decreeing a specific performance, but will leave the parties to their remedy at law.  *Huddleston* v. *Briscoe*, 11 *Vesey* 591; *Stratford* v. *Bosworth*, 2 *Ves. & B.* 341; *Fry on Spec. Perf.*, § 164.

But admitting the contract to be satisfactorily proved, has there been such part performance as to take the case out of the operation of the statute of frauds?  The allegation of the bill is, that on the day that the agreement was made, and in part performance of the· contract, the complainant surrendered to the defendant the occupation of the premises, and put him in the full posession and enjoyment thereof, and delivered him the key of the stable, and that the defendant has ever since been in posession of the premises, under and by virtue of the contract.  These facts are explicitly denied by the answer.  The admitted facts are, that on the day on which the contract was made, the defendant, with the assent

of the complainant, put two of his horses in the stable. The harness of the horses, and some straw for their use, were subsequently placed there by the defendant's servants. A part of the building was occupied by a third party, under lease, who, it was agreed, might remain in possession. The rest of the stable was in the actual occupancy of the complainant. He had upon the premises, on the 24th of December, the day of the agreement, several horses, carriages, harness, hay, feed, and other articles. These articles remained upon the premises until after the 26th of December, when a deed was tendered by the complainant, which the defendant refused to accept, denying the obligation of the contract. A day or two afterwards, the deed for the premises was again tendered, and its acceptance refused by the defendant. Most of the complainant's property appears to have been removed from the premises, after the deed had been once tendered to the defendant. The defendant's property was removed after the second tender and rejection of the deed. There were two keys to the stable. One was retained by the complainant. The other was delivered to a servant of the defendant. Both parties had free access to the premises, to the extent of which they were respectively used and occupied by them. The complainant alleges in his evidence, as well as in his bill, that he delivered formal possession of the premises to the defendant, and that he continued to occupy a part of the premises by the defendant's permission. The defendant, by his evidence, as well as by his answer, denies that the premises were in his possession. He alleges that, as a matter of convenience, with the assent of the complainant, he occupied a small portion of the stable, but that the rest of the premises remained in the possession and under the control of the complainant. In point of fact, the bulk of the premises remained in the actual occupation and enjoyment of the complainant, till after the deed had been tendered and refused. A subsequent abandonment of the premises cannot affect the question.

That the purchaser, in anticipation that the contract would

be carried into effect, should have been permitted to occupy a portion of the premises, is not improbable, especially if it did not materially interfere with the enjoyment of the premises by the vendor.    But even if the contract was concluded, why should the vendor have made a formal delivery of the possession of the entire premises to the purchaser, and made himself a tenant at sufferance before the deed was delivered, or a dollar of the purchase money paid ?    It is not in accordance with the ordinary course of business.    No satisfactory reason is assigned for so unusual a proceeding.    The declarations of the defendant, that the complainant's property might remain upon the premises until he was notified to remove it, and that the complainant's lessee might retain possession of the room occupied by him till the expiration of his term, are clearly referable to the terms of the contract, and cannot operate to affect the relations or the rights of the parties, prior to the delivery of the title.

If the situation of these parties was reversed; if the purchaser was here seeking to enforce this contract against the vendor, upon evidence on his part, similar to that now before the court, there could be no hesitation as to the result.    The court could not hold that the vendor, before parting with his title, or receiving any part of the consideration, and while in the actual occupancy of the major part of the premises, had delivered legal possession to the purchaser, and held only as tenant at sufferance under him.    Nothing but the most unequivocal testimony could justify such conclusion.    Where the evidence is conflicting, the extreme improbability of the fact alleged must be decisive of the controversy.

The statute prohibits the maintenance of an action upon a contract for the sale of land, unless the agreement, or some memorandum or note thereof, be in writing.    The wisdom of the provision is abundantly vindicated by the evidence in this case.    Courts of equity are as much bound by the provisions of the statute as courts of law, and are not at liberty to disregard them.    1 *Story's Eq. Jur.*, § 753.

The principle upon which equity interferes to enforce the specific performance of parol agreements, void by the statute, on the ground of part performance is, that otherwise one party would be able to practice a fraud upon the other. 1 *Story's Eq. Jur.*, § 759.

The policy of permitting the express provisions of the statute to be thus evaded in any case, has been seriously questioned. It should be tolerated only where there is no reasonable room for doubt. The complainant's evidence does not bring his case within the operation of the principle.

The bill must be dismissed.